**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

---

| | |
|---|---|
| In re:   Jason D. Boudreau,<br>          Debtor | BK No: 15-10162<br>Chapter 7 |

---

Jason Boudreau,
    Plaintiff

v.                                                                                                          A.P. No. 16-01001

Department of Treasury, IRS, et al,
    Defendants

---

### DECISION ON CROSS-MOTIONS
### FOR SUMMARY JUDGMENT

Debtor Jason Boudreau commenced this adversary proceeding against the Internal Revenue Service ("IRS") seeking a determination that his federal income taxes assessed for the years 2008, 2009, 2010, and 2011 are dischargeable.[1] (For ease of reference, these tax years will be referred to collectively as the "Tax Years.") The parties filed cross-motions for summary judgment, and the Court heard oral argument on June 14, 2018 and took the motions under advisement. *See* IRS's Motion for Summary Judgment (Doc. #249) and Mr. Boudreau's objection (Doc. #268); Mr. Boudreau's Motion for Summary Judgment (Doc. #267) and IRS's objection (Doc. #270). The determination of the issue hinges entirely on the date Mr. Boudreau filed his tax returns for the Tax Years. While that date is disputed, the parties concur that under the unique circumstances presented, its resolution raises a purely legal issue: what is the

---

[1] Mr. Boudreau filed his complaint initiating this adversary proceeding to determine the dischargeability of student loan and state and federal income tax debts, naming as defendants the IRS and two other defendants. The state tax matter has been fully adjudicated and the student loan matter is proceeding separately from the federal tax matter that is the subject of this decision.

evidentiary proof necessary to establish that filing date? Accordingly, the IRS and Mr. Boudreau agree this matter is ripe for adjudication by summary judgment.[2]

In support of their respective motions, Mr. Boudreau relies on an expansive application of the so-called prison mailbox rule, and the IRS relies on Internal Revenue Code § 7502. Alternatively, the IRS maintains that the prison mailbox rule is inapplicable to determine tax return filing dates, or at the very least, that case law requires a more circumscribed application of the rule. After careful consideration of the parties' arguments, the relevant statutes and regulations, and case law, the Court finds the IRS's motion meritorious.

**I.      Jurisdiction**

The Court has jurisdiction over this matter under 28 U.S.C. §§ 157(a) and 1334, and DRI LR Gen 109(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (I), and (O).

**II.     Factual and Procedural Background**

Mr. Boudreau filed a voluntary petition under chapter 7 of the Bankruptcy Code on January 26, 2015, and received a discharge of his debts on April 21, 2015.[3] The motions for summary judgment relate to Mr. Boudreau's surviving claims against the IRS as asserted in his

---

[2] The Court denied Mr. Boudreau's motions to conduct additional discovery because even if he obtained that discovery, it would have done nothing to corroborate his assertion that he filed the tax returns on the date he alleges. *See* Orders (Doc. ## 280, 281, 282). At most, the requested discovery would have shown that Mr. Boudreau and the IRS communicated with each other via U.S. mail, perhaps supporting only Mr. Boudreau's allegation that he sought information necessary to prepare his tax returns. However, such evidence would not support his claim to have filed the returns for the Tax Years in 2012. *See Me. Med. Ctr. v. United States,* 675 F.3d 110, 117-18 (1st Cir. 2012) (noting evidence of preparation of tax returns is insufficient evidence of filing of tax returns); *Meinhold v. United States*, Civil Action No. 14-CV-00781-RBJ, 2015 WL 6591462, at *4 (D. Col. Oct. 30, 2015) (finding evidence of mere preparation of tax returns is insufficient as a matter of law to establish their filing). Mr. Boudreau sought to engage in copious discovery and filed several motions, but in the end he produced only his own self-serving, uncorroborated declaration that he mailed the 2008 through 2011 tax returns to the IRS in April 2012.

[3] Unless otherwise indicated, the terms "Bankruptcy Code," "chapter," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*.

second amended complaint. *See* Second Amended Complaint ("Complaint," Doc. #98).[4]

Relevant to these remaining claims, the Complaint alleges that "no pre-petition assessment for unpaid taxes was assessed by the IRS for tax years 2008, 2009, 2010, and 2011," and that Mr. Boudreau "was incarcerated during 2012-2013, during which time [he] requested data from the IRS and filed his tax returns." Complaint at 2-3. The relief he seeks is: (i) "a full or partial discharge" of his federal income taxes for the Tax Years; (ii) a determination of when he filed his 2008, 2009, 2010 and 2011 income tax returns; and (iii) a determination of "whether any assessment for those tax years is time-barred."[5] Complaint at 13.

The IRS counters that it has no record of the filing of tax returns for the Tax Years prior to January 2017, when it received returns from Mr. Boudreau, triggering the IRS's post-bankruptcy assessment of taxes due for the Tax Years. Mr. Boudreau maintains that the returns the IRS acknowledges receiving in early 2017 were actually duplicates of the returns he had previously filed that he re-created from records obtained from the IRS during this adversary proceeding. He asserts that he mailed them to the IRS only intending them to be "copies" of the returns allegedly filed in 2012.

Mr. Boudreau alleges that sometime in April 2012 he placed the returns for the Tax Years in a mailbox used by inmates at the Rhode Island Adult Correctional Institutions ("ACI"), where he was incarcerated, for mailing by prison officials through the United States postal system. He acknowledges that he did not send the returns by registered mail or certified mail, instead electing to use first class mail. He also did not request that prison officials create a prisoner mail

---

[4] The Complaint also asserted claims against the IRS for tax years 2004 and 2007; those claims were previously resolved. Mr. Boudreau's other asserted claims have either been resolved or significantly narrowed during the course of this proceeding.

[5] The amount of any federal tax liability is no longer in dispute as the IRS has accepted Mr. Boudreau's calculations of his tax liability for each of these years.

log for him as a record of the mailing of the returns. At the hearing he stated that he did not use registered mail or request a prisoner mail log to be created because he did not give it much thought and did not consider it might be necessary. Mr. Boudreau has no copies of the returns allegedly mailed in 2012 and no copy of the postmarked envelope in which he states he placed them. He explained that subsequent to his release from the ACI he was evicted from his rented apartment and the landlord disposed of all of his belongings.

To rebut the IRS's summary judgment motion and in support of his own motion, Mr. Boudreau relies on his declaration attesting to the placement of the tax returns in the ACI mailbox in 2012. *See* Declaration of Jason Boudreau ("Declaration," Doc. #267, Exh. 1). All of this boils down then to one dispositive question: is Mr. Boudreau's Declaration legally sufficient to defeat the IRS's motion and to entitle him to a judgment declaring he has no tax debts for the Tax Years?

**III. Applicable Standards**

    A.    <u>Motions for Summary Judgment</u>

"Federal Rule of Bankruptcy Procedure 7056 incorporates Federal Rule of Civil Procedure 56 as the mechanism for adjudicating summary judgment motions." *Harrington v. Simmons* (*In re Simmons*), 810 F.3d 852, 857 (1st Cir. 2016). "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[A]n issue is 'genuine' if the record permits a rational factfinder to resolve that issue in favor of either party . . . [and] a fact is 'material' if its existence or nonexistence has the potential to change the outcome of the suit." *Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1, 7 (1st Cir. 2015) (internal citations and quotations omitted). Proving a genuine issue of material fact requires

4

"significantly probative" assertions, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), going beyond "conclusory allegations, improbable inferences or unsupported speculation . . . ." *Razzaboni v. Schifano (In re Schifano)*, 378 F.3d 60, 66 (1st Cir. 2004).

    B.    <u>Dischargeability of Tax Debts</u>

While Bankruptcy Code § 727(a) generally grants a debtor a discharge of debts, § 523(a) "addresses the nondischargeability of certain types of debts, including three categories of tax debts that are excepted from discharge." *Berry v. Mass. Dept. of Rev. (In re Berry)*, No. 15-41218-CJP, 2016 WL 3676528, at *2 (Bankr. D. Mass. June 30, 2016) (citing 11 U.S.C § 523(a)(1)(A)-(C)). "If the debt for such taxes meets the standard under § 523(a)(1)(A), (B) or (C), then the debt is nondischargeable." *Nilsen v. Mass. Dept. of Rev. (In re Nilsen)*, 542 B.R. 640, 643 (Bankr. D. Mass. 2015). The party seeking to establish an exception to discharge bears the burden of proof to show by the preponderance of the evidence that its claim falls "squarely within an exception to discharge." *Comm. v. Richmond (In re Richmond)*, 351 B.R. 6, 10 (Bankr. D.N.H. 2006) (citing *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997)); *see also In re Nilsen*, 542 B.R. at 643; *In re Ryan*, 504 B.R. 686, 700 (Bankr. D. Mass. 2013).

The IRS asserts that Mr. Boudreau's tax debts for the Tax Years, assessed post-petition in 2017, are nondischargeable by virtue of § 523(a)(1)(A) "because they are of the kind specified under 11 U.S.C. § 507(a)(8) 'not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case[.]'" IRS's Motion for Summary Judgment at 3 (quoting § 507(a)(8)). Mr. Boudreau concedes that if he cannot establish that he filed the returns in 2012, the IRS is correct and his tax liabilities are nondischargeable. On the other hand, if the Court determines the returns were filed in 2012, then Mr. Boudreau and the IRS agree that he

5

would have no tax liability for those years because the IRS did not assess the taxes against him within three years of the filing of the returns. *See* 26 U.S.C. § 6501(a).[6]

**IV.    Positions of the Parties**

The IRS argues that: (a) it has produced documentary evidence sufficient to establish that the tax returns were not filed in 2012; (b) as a matter of law, the exclusive methods for Mr. Boudreau to rebut that evidence and show that he filed the returns in 2012 are to produce direct proof of actual delivery of the returns to the IRS or of mailing of the returns by registered or certified mail; and (c) he has failed to provide any evidence of delivery of the returns by any of these methods.

Mr. Boudreau argues that: (a) the IRS's documentary evidence does not show that the tax returns were not actually received by the IRS in 2012; (b) he may establish that he filed the returns on the date alleged by use of the prison mailbox rule; and (c) his Declaration is sufficient as a matter of law to satisfy that rule. Challenging his arguments, the IRS maintains that even if the Court applies a "mailbox rule" to determine whether the returns were filed in 2012, Mr. Boudreau has not satisfied the evidentiary requirements of the rule. Therefore, as a matter of law the Court must find that the returns were not filed in 2012.

**V.     Analysis**

    A.    <u>Initial Burden on IRS</u>

The Court finds that the IRS has met its initial burden and submitted documentary evidence sufficient to show that the tax returns were not filed in 2012. In support of its motion for summary judgment and its objection to Mr. Boudreau's motion, the IRS produced several IRS

---

[6] As a practical matter, this would achieve the same outcome as if the taxes were declared dischargeable.

6

Forms 4340 detailing the status of tax return filings and other transactions with Mr. Boudreau. *See* Doc. #249-2. These forms show that the IRS has no record of receiving the returns for the Tax Years in 2012, but they do show receipt of the returns on January 4, 2017. Mr. Boudreau maintains that the Forms 4340 show only that the returns were not *processed* by the IRS in 2012, not that the IRS did not *receive* them that year. To the contrary, these forms constitute the official record of the IRS and are legally sufficient evidence that the IRS did not receive the tax returns in 2012. *See Wheeler v. C.I.R.*, 446 F. App'x 951, 953 (10th Cir. 2011) ("The Tax Court has repeatedly confirmed that a Form 4340 can provide the basis for finding that a taxpayer has not filed a return."). The burden thus shifts to Mr. Boudreau to produce sufficient rebuttal evidence.

### B. Legally Sufficient Evidence of Tax Return Filings

#### i. *Internal Revenue Code § 7502*

Internal Revenue Code ("IRC") § 7502(a) provides that a tax return mailed and actually delivered to the IRS shall be deemed delivered to the IRS on the date of the postmark, provided the postmark is dated on or prior to the prescribed due date of the return. *See* 26 U.S.C. § 7502(a)(1) and (2).[7] In other words, under the statute timely mailing is treated as timely filing.

---

[7] IRC § 7502(a) states:

> (1) Date of delivery. If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return, claim, statement, or other document is required to be filed, or to which such payment is required to be made, the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be.
>
> (2) Mailing requirements. This subsection shall apply only if—
>
> > (A) the postmark date falls within the prescribed period or on or before the prescribed date—
> >
> > > (i) for the filing (including any extension granted for such filing) of the return, claim, statement, or other document, or

This provision has been referred to as a "statutory mailbox rule." *See Me. Med. Ctr. v. United States*, 675 F.3d 110, 114 (1st Cir. 2012). Because the parties agree that Mr. Boudreau did not timely file the tax returns for the Tax Years (except for possibly the 2011 tax return),[8] and Mr. Boudreau has no evidence of a postmark or proof of actual delivery of the returns to the IRS in 2012, IRC § 7502(a) is inapplicable.

The IRS posits that IRC § 7502(c) dictates the exclusive means by which Mr. Boudreau may prove that he filed the returns in 2012. This subsection provides that a tax return sent by registered mail shall be prima facie evidence that the return was delivered to the IRS on the date of the registered mail postmark. *See* IRC § 7502(c)(1)(A) and (B).[9] Under this subsection, not

---

(ii) for making the payment (including any extension granted for making such payment), and

(B) the return, claim, statement, or other document, or payment was, within the time prescribed in subparagraph (A), deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid, properly addressed to the agency, officer, or office with which the return, claim, statement, or other document is required to be filed, or to which such payment is required to be made.

[8] The Court noted earlier, when ruling on the IRS's motion to dismiss the proceeding, that the IRS has not raised the issue of the nondischargeability of the taxes because of the late filing of the returns. In *Fahey v. Mass. Dept. of Rev. (In re Fahey)*, the Court of Appeals for the First Circuit ruled that late-filed Massachusetts state tax returns do not qualify as "returns" for dischargeability purposes under the so-called hanging paragraph in § 523 and, therefore, the related state taxes were nondischargeable under § 523(a)(1)(B). *See* 779 F.3d 1 (1st Cir. 2005). Although the IRS invoked *Fahey* in a previous motion to dismiss the First Amended Complaint, it abandoned this ground for nondischarge to avoid the need to address Mr. Boudreau's defense that the IRS is judicially estopped from asserting the late filing of returns as a basis for nondischarge.

[9] IRC 7502(c) states:

(1) Registered mail. For purposes of this section, if any return, claim, statement, or other document, or payment, is sent by United States registered mail—

(A) such registration shall be prima facie evidence that the return, claim, statement, or other document was delivered to the agency, officer, or office to which addressed; and

(B) the date of registration shall be deemed the postmark date.

(2) Certified mail; electronic filing. The Secretary is authorized to provide by regulations the extent to which the provisions of paragraph (1) with respect to prima facie evidence of delivery and the postmark date shall apply to certified mail and electronic filing.

8

only is the postmark date deemed the date of mailing, but the registration itself is deemed prima facie evidence of delivery of the return to the IRS, even absent any proof of actual delivery. Of course, Mr. Boudreau cannot avail himself of this statutory provision because he did not send the returns by registered or certified mail.

Treasury Department regulations provide some clarity on IRC § 7502, explaining that § 7502 "is not applicable unless the document . . . is delivered by U.S. Mail to the [IRS]." Treas. Reg. § 301.7502-1(e)(1) (as amended by T.D. 9543, 2011 WL 3664239, 2011-40 I.R.B. 470). It provides an "exception to actual delivery" for registered and certified mail, repeating the prima facie evidence provision from IRC § 7502(c), stating:

> Other than direct proof of actual delivery, proof of proper use of registered or certified mail . . . [is] the exclusive means to establish prima facie evidence of delivery of a [tax return] . . . . No other evidence of a postmark or of mailing will be prima facie evidence of delivery or raise a presumption that the document was delivered.

Treas. Reg. § 301.7502-1(e)(2)(i).

Discussing the background of Treas. Reg. § 301.7502-1, the Federal Register states that its purpose is "to provide guidance as to the only ways to establish prima facie evidence of delivery of documents that have a filing deadline prescribed by the internal revenue laws, absent direct proof of actual delivery." T.D. 9543, 2011 WL 3664239, 2011-40 I.R.B. 470. The Register notes that at the time of the enactment of the regulation in 2011 there was "a conflict among the Federal circuit courts of appeal as to whether the provisions in [IRC § 7502] provide the exclusive means to establish prima facie evidence of delivery of a document to the IRS." *Id*. Treas. Reg. § 301.7502-1 clarifies that "other than direct proof of actual delivery, the exclusive means to establish prima facie evidence of delivery of Federal tax documents to the IRS" is to prove use of registered or certified mail. *Id*. The Register unequivocally states that absent actual delivery, "first

9

class mail without additional services provides nothing, such as certified or registered mail receipt, to establish proof of delivery." *Id.*

IRC § 7502, Treas. Reg. § 301.7502-1, and T.D. 9543 appear to support the IRS's position that the only evidence Mr. Boudreau may rely on to establish the 2012 filing date of his tax returns is either direct proof of actual delivery or proof of use of registered or certified mail. However, the IRS acknowledges that notwithstanding the enactment of IRC § 7502 and its clarifying regulations, there continues to be a split among courts of appeals about the exclusive application of this statutory evidentiary rule. *See Me. Med. Ctr.*, 675 F.3d at 114 n. 8. Germane to the controversy here, the Court of Appeals for the First Circuit expressly declined to decide whether IRC § 7502 became the exclusive means to prove the filing of returns (or other documents) with the IRS, thereby supplanting the common law mailbox rule as a method of evidentiary proof of timely filing. *See id.* (stating that "[b]ecause the common law mailbox rule is unavailable based on the facts of this case, we need not decide on which side of the circuit split we fall").[10]

Here, as in *Maine Medical Center*, this Court need not decide whether IRC § 7502 is the exclusive means by which Mr. Boudreau may prove that he filed the returns in 2012; the requirements to prevail under either the common law or prison mailbox rule, the Court concludes, have not been satisfied.

---

[10] In *Maine Medical Center*, the court determined that even if the common law mailbox rule applied, the refund claim would have been untimely when considering the amount of mailing time for receipt by the IRS where the taxpayer allegedly mailed the claim on the date of the filing deadline.

ii. *Common Law Mailbox Rule*

The common law mailbox rule "permit[s] a fact-finder to presume that properly mailed documents would actually be received in due course by the addressee" and "allow[s] for the presumption that physical delivery occurred in the ordinary time after mailing." *Me. Med. Ctr.*, 675 F.3d at 114 (internal quotations and emphasis omitted). This rule was developed "[t]o help [courts] determine when the pertinent document was physically delivered," not necessarily to determine if tax returns not received by the IRS were actually mailed. *Phila. Marine Trade Ass'n v. Comm'r*, 523 F.3d 140, 147 (3rd Cir. 2008). The IRS's argument is well taken; under these circumstances clarity on that question is readily achieved if IRC § 7502 is deemed to be the exclusive means of proving the filing of the tax returns. But, even presuming that the common law mailbox rule may be invoked in these circumstances (rather than limiting its application to the timing of filing), courts uniformly require more than the taxpayer's uncorroborated testimony. They insist on additional supporting evidence such as a postmark, proof of actual delivery, copies of the dated and signed tax returns allegedly filed, or other witness testimony. *See Me. Med. Ctr.*, 675 F.3d at 117; *Sorrentino v. IRS*, 383 F.3d 1187, 1194 (10th Cir. 2004); *Anderson v. United States*, 966 F.2d 487, 489 (9th Cir. 1992); *Wood v. Comm'r*, 909 F.2d 1155, 1156-57 (8th Cir. 1990); *In re Ryan*, 504 B.R. at 703.

In an effort to address these shortcomings, Mr. Boudreau states that while imprisoned in the ACI he "had written correspondence with the IRS in order to obtain the information necessary to file [his] 2008 to 2011 tax returns," that "in April, 2012 [he] mailed [his] 2008 to 2011 tax returns in the same large envelope to the IRS with first class postage prepaid," and that "the envelope was placed in the mailbox located at the ACI marked for outgoing mail." *See* Declaration at 24. These communications with the IRS and Mr. Boudreau's statements in his

11

Declaration do not bridge the evidentiary gap and are inadequate substitutes for the necessary corroborating evidence to apply the common law mailbox rule.

### iii. *Prison Mailbox Rule*

Mr. Boudreau contends that the prison mailbox rule applies here, requiring only his sworn declaration of mailing with no additional corroborating evidence. The Court disagrees. Generally, this rule has been applied to court filings and provides that the date of a court filing by an incarcerated individual is deemed to be the date on which the inmate gives the document to prison officials for mailing, even if never received by the court. *See Price v. Philpot*, 420 F.3d 1158, 1164-65 (10th Cir. 2005) (explaining rule's application to notices of appeal, motions to vacate sentences, habeas corpus petitions, and other papers required to be filed with courts). The IRS responds that the prison mailbox rule is limited to court filings and cannot be invoked for the filing of tax returns.

The Supreme Court first enunciated the prison mailbox rule in *Houston v. Lack*, when it held that a notice of appeal was deemed to be "filed" with the clerk of the court on the date a *pro se* prisoner delivered the notice to prison authorities for mailing. 487 U.S. 266, 275 (1988). The Court considered it a "a bright-line rule" that would not engender contentious litigation because prison authorities have "well-developed procedures for recording the date and time at which they receive papers for mailing," and "reference to prison mail logs will generally be a straightforward inquiry." *Id*.

For appeals, this judicially-crafted rule has been codified by federal rules of procedure. *See, e.g.*, Fed. R. App. P. 4(c) and Fed. R. Bankr. P. 8002(c). But even under these rules, consistent with *Houston's* goal of "a bright-line rule," more is required than the prisoner's self-serving declaration of mailing. Federal Rule of Appellate Procedure 4(c)(1) mandates that if the

institution where an inmate is confined has a "system designed for legal mail" an inmate "must use that system to receive the benefit" of the rule. This same requirement is imposed by Federal Rule of Bankruptcy Procedure 8002(c) for bankruptcy appeals.

Mr. Boudreau is correct that the prison mailbox rule and the rationale of *Houston* have been applied by courts to situations beyond the filing of notices of appeal.[11] But the Court rejects his position that he has satisfied this mailbox rule and proven that in 2012 he filed his federal tax returns for the Tax Years through the mere submission of the Declaration. Consistent with the rationale of *Houston*, the Court concludes that it is simply not enough for him to aver in a declaration that while incarcerated at the ACI, in April 2012 he placed the returns in one envelope and deposited them in the prison outgoing mailbox for mailing to the IRS by first class mail, postage prepaid, using postage stamps purchased at the ACI's commissary. *See* Declaration. The wholesale abandonment of the requirement of corroborating evidence to prove the filing of tax returns would severely undermine *Houston's* rationale and the goal of a straightforward "bright-line rule."

The cases cited by Mr. Boudreau are distinguishable from the present circumstances as they dealt with court filings or other administrative appeals. *See generally Edwards v. United States*, 266 F.3d 756, 758 (7th Cir. 2001). He does not cite a case in which the prison mailbox rule has been applied to the filing of tax returns for which the taxing authority has no record of receipt. Instead, the Court finds more persuasive the Tenth Circuit's decision in *Crook v. C.I.R.*, 173 F. Appx 653 (10th Cir. 2006), cited by the IRS. In reviewing the timeliness of the inmate-

---

[11] *See, e.g.*, *Morales-Rivera v. United States*, 184 F.3d 109, 110-11 (1st Cir. 1999) (discussing *Houston* and applying the rule to the filing of a motion to vacate sentence under 28 U.S.C. § 2255); *Edwards v. United States*, 266 F.3d 756, 758 (7th Cir. 2001) (discussing *Houston* and collecting circuit court cases applying the rule to various types of court filings).

taxpayer's request for redetermination of the IRS's tax deficiency, the court concluded that even if the less stringent standard of the prison mailbox rule were applied instead of IRC § 7502, more was required to satisfy the rule for proof of filing of federal tax matters than the mere declaration of the inmate. *Id*. at 657. Noting that no evidence of a postmark date, use of registered mail, or a prison mail log had been proffered, the court emphasized that the taxpayer still bore the burden of proving compliance with the rule. "Self-serving declarations of mailing, without more, are insufficient to invoke the presumption [of delivery]." *Id*. (quoting *Sorrentino*, 383 F.3d at 1191). *See also Hatch v. C.I.R.,* 364 Fed. Appx. 401, 403 (10th Cir. 2010) (rejecting inmate's appeal of Tax Court's dismissal of his petition to re-determine a tax deficiency as untimely where inmate failed to provide a prison log of mailing or other corroborating evidence, and concluding that "proof [of mailing] needs to be something more than self-declarations").

In short, even those courts that have applied the prison mailbox rule beyond the context of court filings have, as in the application of the common law mailbox rule, relied upon the safeguards afforded by the types of corroborating evidence discussed earlier. For a *pro se* prisoner, requiring corroborating evidence such as registered mail or a prison log of the mailing is not overly burdensome. Here, Mr. Boudreau does not assert that any of these methods to corroborate the mailing of the returns in 2012 were unavailable to him; he simply did not use any of these mailing methods because he did not think they would be necessary. Under the facts of this case, there is little justification for not requiring corroborating evidence and applying a less stringent standard of proof than is contemplated under IRC § 7502, the common law mailbox rule, or the prison mailbox rule in the manner advocated by Mr. Boudreau. *See Huizar v. Carey*, 273 F.3d 1220, 1224 (9th Cir. 2001) (applying prison mailbox rule to the filing of a habeas corpus petition because "the prison's log of outgoing mail provides strong evidence of the date

[the petitioner] handed over his petition"); *Oliver v. Comm'r of Mass. Dept. of Corrections*, 30 F.3d 270, 271 (1st Cir. 1994) (finding the prisoner "undermined the 'bright-line rule' rationale" of *Houston* by failing to file his notice of appeal in a manner that would be recorded by prison staff) (citations omitted).

## VI. Conclusion

The Court finds that the IRS has met its burden of proving by a preponderance of the evidence that Mr. Boudreau did not file tax returns for the Tax Years in 2012. Based on the legal standards for review of summary judgment motions, under the circumstances and evidence presented, there is no genuine dispute of material fact. A rational factfinder could resolve the issue of whether Mr. Boudreau filed the tax returns in 2012 only in favor of the IRS, and accordingly, the IRS is entitled to judgment as a matter of law. Conversely, Mr. Boudreau has not satisfied his burden to rebut the IRS's evidence, and he is not entitled to summary judgment in his favor. The IRS's motion for summary judgment is GRANTED, and Mr. Boudreau's motion for summary judgment is DENIED. The Court will enter a separate judgment in accord with this decision.

Date: August 9, 2018 By the Court,

*Diane Finkle*
Diane Finkle
U.S. Bankruptcy Judge